KATHLEEN MATTHIESSEN ET AL. *v.* DORI VANECH ET AL.
(SC 16845)

Sullivan, C. J., and Borden, Katz, Palmer and Zarella, Js.

Argued January 16—officially released December 16, 2003

*Gregory P. Lynch,* for the appellants (defendants).

*Stephen A. Finn,* with whom was *Daniel M. Young,* for the appellees (plaintiffs).

*Jack G. Steigelfest* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*William F. Gallagher* and *Kathy A. Tenney* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Opinion*

PALMER, J. This appeal arises out of a negligence action brought by the named plaintiff, Kathleen Matthiessen,[1] against the defendants, Dori Vanech and Nicholas Vanech, to recover damages for injuries sustained when the car the plaintiff was driving was struck by a vehicle operated by Dori Vanech and owned by her father, Nicholas Vanech. A jury returned a verdict for the plaintiff against both defendants and awarded her total damages in the amount of $493,000, $375,000 in compensatory damages and $118,000 in punitive damages. Thereafter, the trial court held a collateral source hearing and reduced the award of compensatory dam-

---

[1] James Matthiessen, Kathleen Matthiessen's husband, also was a plaintiff in the negligence action and sought damages for loss of consortium. The jury rejected his claim, however, and he has not appealed. Hereafter, all references in this opinion to the plaintiff are to Kathleen Matthiessen.

ages by $11,604.11. The defendants appeal[2] from the judgment rendered by the trial court in accordance with the reduced jury verdict, claiming that the trial court improperly: (1) failed to instruct the jury on comparative negligence; (2) instructed the jury on recklessness and negligence; (3) rendered judgment against the defendants for punitive damages; (4) permitted the jury to begin its deliberations and to review the trial exhibits before the court had entertained the parties' exceptions to the jury charge and before all of the exhibits had been marshaled and reviewed by the parties' counsel; and (5) permitted the plaintiff to amend her complaint following the commencement of jury deliberations. We reverse the judgment of the trial court with respect to the award of punitive damages against Nicholas Vanech, and we affirm the judgment in all other respects.

The jury reasonably could have found the following facts. On the morning of October 13, 1994, the plaintiff was driving northbound on Lakeside Drive in Stamford at a rate of speed of approximately twenty miles per hour. Quarry Road intersects Lakeside Drive from the east but does not cross it, forming a "T" intersection. As the plaintiff approached the intersection of Lakeside Drive and Quarry Road, a vehicle operated by Karl Blume was stopped at the stop sign on Quarry Road. Blume was waiting for the plaintiff's car to pass through the intersection so that he could turn safely onto Lakeside Drive.[3] At that same time, Dori Vanech was operating her vehicle immediately behind Blume on Quarry Road. Although she lived in the area and was

---

[2] The defendants appealed from the judgment to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[3] There is no light or stop sign on Lakeside Drive where it intersects with Quarry Road. Thus, vehicles proceeding on Lakeside Drive have the unrestricted right-of-way vis-a-vis vehicles entering onto Lakeside Drive from Quarry Road.

very familiar with the intersection and its hazards,[4] Vanech pulled around the right side of Blume's car and, without stopping at the stop sign, turned left in front of Blume's car onto Lakeside Drive. Vanech went through the stop sign at a rate of speed of approximately ten to fifteen miles per hour, striking the plaintiff's vehicle in the center of the intersection, directly in front of Blume's car. The plaintiff did not see Vanech's car until a split second before impact. As a result of the accident, the plaintiff suffered physical injuries and property damage.

At the conclusion of the trial, the court provided the jury with a special verdict form containing several interrogatories. In response to those interrogatories, the jury reported its finding that Dori Vanech's conduct was the proximate cause of the accident, and awarded the plaintiff $175,000 in economic damages and $200,000 in noneconomic damages. The jury also found that Dori Vanech's actions or omissions immediately before the accident were reckless, and awarded the plaintiff $118,000 in common-law punitive damages.[5]

[4] Both roads are narrow, densely wooded and have a single lane for travel in each direction. In addition, a person operating a vehicle northbound on Lakeside Drive has an obstructed view of Quarry Road due to the woods and a small embankment that runs along the east side of Lakeside Drive. Conversely, a person operating a vehicle stopped at the stop sign where Quarry Road intersects Lakeside Drive has a limited view of traffic approaching from the south on Lakeside Drive due to a bend in the road on Lakeside Drive, which is a short distance south of the intersection. Finally, two stone pillars at the intersection of the two roads partially obstruct the view from Quarry Road, both to the north and to the south. Accordingly, drivers turning onto Lakeside Drive from Quarry Road must exercise extreme caution because there is little time to react to vehicles approaching from the south.

[5] Common-law punitive damages "serve primarily to compensate the plaintiff for his injuries and, thus, are . . . limited to the plaintiff's litigation expenses less taxable costs. . . . [This] rule, when viewed in the light of the increasing costs of litigation, also serves to punish and deter wrongful conduct." (Citations omitted.) *Berry* v. *Loiseau*, 223 Conn. 786, 827, 614 A.2d 414 (1992). Such damages also are known as "exemplary" damages. See, e.g., *Alaimo* v. *Royer*, 188 Conn. 36, 42, 448 A.2d 207 (1982).

The jury declined to award double or treble damages as permitted by General Statutes § 14-295.[6] Additional facts will be provided as necessary.

I

The defendants first contend that the trial court improperly refused to charge the jury on comparative negligence. The defendants assert that there was sufficient evidence presented at trial to support a finding that the plaintiff could have prevented the collision but for her own negligence. In particular, the defendants claim that the plaintiff was negligent by failing to keep a proper lookout, by failing to keep her vehicle under reasonable and proper control, by failing to sound her horn, by failing to turn her vehicle to avoid colliding with the defendants' vehicle, and by failing to apply her brakes in time to avoid the collision. We conclude that the trial court properly determined that there was insufficient evidence to support a charge on comparative negligence. Moreover, we conclude that even if there had been enough evidence to warrant a charge on comparative negligence, the trial court's failure to give such a charge was harmless in this case.

The following additional facts and procedural history are necessary to our analysis of this claim. In their

---

[6] Section 14-295 permits an award of double or treble damages in any civil action seeking damages resulting from personal injury, wrongful death or damage to property when the fact finder has determined that the tortfeasor violated one or more of the enumerated provisions of our motor vehicle laws, including General Statutes §§ 14-218a and 14-222, and that the statutory violation was a substantial factor in causing the injury, death or property damage. Although the jury expressly found that Dori Vanech "either deliberately or with reckless disregard violated either (a) General Statutes § 14-218a (traveling unreasonably fast for conditions) or (b) General Statutes § 14-222 (reckless driving) and that such violation was a substantial factor in causing [the plaintiff's] injuries," the jury nevertheless elected not to award the plaintiff punitive damages under § 14-295.

amended answer to the plaintiff's complaint,[7] the defendants raised by way of special defense that the plaintiff's negligence had contributed to the accident. After the close of evidence, the defendants requested that the trial court charge the jury on the issue of comparative fault. The trial court refused to submit the requested charge to the jury. Thereafter, the jury returned a verdict in favor of the plaintiff. The defendants then filed a motion to set aside the verdict, claiming, inter alia, that the trial court improperly had directed the jury not to consider the defendants' claim of comparative negligence. In denying the defendants' motion to set aside the verdict, the trial court explained that it had not instructed the jury on comparative negligence "because the evidence at trial was insufficient to support a finding that [the plaintiff] was negligent. . . . There was no foundation, weak, incredible or otherwise, in the evidence for a finding of negligence [on the part of] the plaintiff."

In determining whether the trial court improperly refused a request to charge, "[w]e . . . review the evidence presented at trial in the light most favorable to supporting the . . . proposed charge." (Internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, 254 Conn. 131, 139, 757 A.2d 516 (2000). "A request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given." (Internal quotation marks omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 592, 783 A.2d 1001 (2001). If, however, "the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury." (Internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 355, 746 A.2d 761 (2000). Thus, "a trial court

---

[7] The plaintiff's amended complaint was the operative complaint. Unless otherwise indicated, references hereinafter to the complaint are to the amended complaint.

should instruct the jury in accordance with a party's request to charge [only] if the proposed instructions are reasonably supported by the evidence." (Internal quotation marks omitted.) *Godwin* v. *Danbury Eye Physicians & Surgeons, P.C.*, supra, 139.

The only evidence relied on by the defendants to support their claim that the plaintiff was negligent is her testimony that she did not see the defendants' car until a split second before impact. Viewing this evidence in the light most favorable to supporting the requested charge, we do not agree that this testimony alone provided an adequate basis for a finding that the plaintiff had been contributorily negligent. Indeed, our review of the evidence, which included numerous photographic exhibits of the intersection from various distances and angles, indicates that the plaintiff's view of Quarry Road, as she approached it from the south, was obstructed by trees and a short embankment. The mere fact, therefore, that the plaintiff did not see the defendants' car until it was upon her is not evidence of the plaintiff's negligence; rather, it was the inevitable result of the manner in which Dori Vanech had entered the intersection coupled with the natural physical attributes of the accident scene.

Even if we were to assume, arguendo, that there had been evidence from which the jury reasonably could have found that the plaintiff was contributorily negligent, the trial court's failure to instruct the jury on comparative negligence was rendered harmless by the jury's finding that Dori Vanech's conduct was reckless. General Statutes § 52-572h (o) provides in relevant part: "Except as provided in subsection (b) of this section, there shall be no apportionment of liability or damages between parties liable for negligence and parties liable on any basis other than negligence including, but not limited to, intentional, wanton or reckless misconduct, strict liability or liability pursuant to any cause of action

created by statute . . . ." Section 52-572h, as amended by No. 99-69, § 1, of the 1999 Public Acts, is the statutory embodiment of the common-law rule that contributory negligence is not a defense to recklessness.[8] See, e.g., *Beckwith* v. *Stratford*, 129 Conn. 506, 511, 29 A.2d 775 (1942); *Bordonaro* v. *Senk*, 109 Conn. 428, 432–33, 147 A. 136 (1929). Accordingly, even if the jury reasonably could have found that the plaintiff's conduct was a contributory cause of the accident, an apportionment of liability and damages between the parties would not have been proper in light of the jury's determination that Dori Vanech's conduct was reckless.

II

The defendants next contend that the trial court improperly charged the jury on recklessness, and that the charge led the jury to an unwarranted award of punitive damages against the defendants.[9] In particular, the defendants claim that the charge was insufficient to enable the jury to distinguish between recklessness and negligence. The defendants further contend that the court's charge was unbalanced in favor of recklessness and, in addition, that the court should have explained the concepts of negligence per se and gross negligence. We disagree.

Certain additional facts and procedural history are necessary to our resolution of this issue. The defendants submitted a detailed request to charge on recklessness,

---

[8] Although the motor vehicle accident in this case took place in 1994, Public Acts 99-69, § 2, which took effect on May 27, 1999, was made applicable to any civil action pending on or filed after August 11, 1998.

[9] It is undisputed that the jury properly could not have awarded punitive damages in the absence of a finding, supported by the evidence, that Dori Vanech's conduct was reckless. See, e.g., *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 289 n.7, 472 A.2d 306 (1984) (punitive damages may be awarded only when evidence shows reckless, intentional or wanton violation of rights of others). As we discuss in part IV of this opinion, however, the jury improperly awarded punitive damages against Nicholas Vanech as a matter of law.

but did not file a request to charge on negligence. At the conclusion of the trial, the court instructed the jury in relevant part as follows: "This is a negligence case and, therefore, the plaintiff must prove three essential things. First, that the defendant was negligent. Second, that the negligence caused the plaintiff's claimed injuries and third, that the plaintiff has suffered damages. I'll talk to you now a little bit about the law applicable to these different elements in the case. The defendants here have admitted that Dori Vanech was negligent in causing the collision between [her] vehicle and the [plaintiff's] vehicle. Therefore, that is not an issue in this case, and I instruct you that the [plaintiff has] established the defendant's negligence.

\* \* \*

"Now, I'm going to define reckless or recklessness. It is something more than negligence. Very briefly, negligence is the failure to act prudently or to use ordinary and reasonable care under the circumstances.

"To be reckless means a person must recognize that his or her actions or omissions involved a risk to others which is substantially greater than that which is necessary to make his or her conduct negligent.

"Reckless requires a conscious choice of a course of action involving serious dangers to others, either with knowledge of that serious danger, or with knowledge of facts which a reasonable person would recognize as being a serious danger to others. In other words, reckless is [a] serious or extreme departure from ordinary or reasonable care." Thereafter, the defendants excepted to the trial court's charge on negligence on the ground that the instruction was inadequate.

"The standard of review for a challenge to the propriety of a jury instruction is well established. [J]ury instructions are to be read as a whole, and instructions

claimed to be improper are read in the context of the entire charge. . . . A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]nstructions to the jury need not be in the precise language of a request. . . . Moreover, [j]ury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Citations omitted; internal quotation marks omitted.) *McDermott* v. *Calvary Baptist Church*, 263 Conn. 378, 383–84, 819 A.2d 795 (2003).

"Recklessness requires a conscious choice of a course of action either with knowledge of the serious danger to others involved in it or with knowledge of facts which would disclose this danger to any reasonable man, and the actor must recognize that his conduct involves a risk substantially greater . . . than that which is necessary to make his conduct negligent. *Begley* v. *Kohl & Madden Printing Ink Co.*, 157 Conn. 445, 450–51, 254 A.2d 907 (1969), quoting 2 Restatement, Torts § 500, comment [g]." (Internal quotation marks omitted.) *Bishop* v. *Kelly*, 206 Conn. 608, 614–15, 539 A.2d 108 (1988). More recently, we have described recklessness as "a state of consciousness with reference to the consequences of one's acts. . . . It is more than negligence, more than gross negligence. . . . The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. . . . Wanton misconduct is reckless misconduct. . . . It is such conduct as indicates a reckless disregard of

the just rights or safety of others or of the consequences of the action. . . .

"While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that willful, wanton, or reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." (Internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 342–43, 813 A.2d 1003 (2003).

The defendants essentially contend that the trial court's charge inadequately explained the distinction between negligence and recklessness, and placed too much emphasis on the meaning of recklessness. As the trial court instructed the jury, however, the defendants had *admitted* that Dori Vanech's negligence was a cause of the accident. Thus, with respect to the conduct of Dori Vanech, the only issue for the jury to decide was whether her conduct was reckless. The defendants have provided no authority, and we are aware of none, to support their assertion that a charge on recklessness must include an elaborate discussion of the law on negligence, including an explanation of gross negligence and negligence per se.[10] More importantly, the defendants have failed to present any persuasive reason why such a charge is necessary.

In the present case, the court advised the jury that recklessness is a "serious or extreme departure from

[10] We note, moreover, that "gross negligence has never been recognized in this state as a separate basis of liability in the law of torts. We have never recognized degrees of negligence as slight, ordinary, and gross in the law of torts." *Decker* v. *Roberts*, 125 Conn. 150, 157, 3 A.2d 855 (1939); see also *Film* v. *Downing & Perkins, Inc.*, 135 Conn. 524, 526, 66 A.2d 613 (1949) ("[w]e do not recognize a classification of standards of care into slight, ordinary, and gross, or the like, except in certain definite relationships").

ordinary or reasonable care," and requires "a conscious choice of a course of action involving serious dangers to others, either with knowledge of that serious danger, or with knowledge of facts which a reasonable person would recognize as being a serious danger to others." The trial court also explained that "negligence is the failure to act prudently or to use ordinary and reasonable care under the circumstances," and emphasized that "[t]o be reckless means a person must recognize that his or her actions or omissions involved a risk to others which is substantially greater than that which is necessary to make his or her conduct negligent." We conclude that the trial court's charge on recklessness was correct in law, adapted to the issues and sufficient for the guidance of the jury.

### III

The defendants next claim that "the trial court's charge improperly allowed the jury to find punitive damages as to Dori Vanech because her conduct, if proven, constituted negligence, not recklessness."[11] We reject this claim.[12]

As previously stated, a request to charge that accurately states the law pertaining to an issue relevant to the case must be given. *Bovat* v. *Waterbury*, supra, 258 Conn. 592. If, however, the evidence reasonably does not support a finding on the particular issue, the trial court is duty bound to refrain from submitting it to the jury. *State* v. *Copas*, supra, 252 Conn. 355.

---

[11] The defendants submitted a detailed request to charge on recklessness, but later took exception to the charge on the ground that there was insufficient evidence to support it, thereby preserving this claim for our review. See Practice Book § 16-20.

[12] We note that, although Dori Vanech's conduct is the subject of this claim, Nicholas Vanech joins the claim because the jury, by virtue of its award of punitive damages against him, necessarily imputed her reckless conduct to him. As we explain in part IV of this opinion, however, the jury verdict assessing punitive damages against Nicholas Vanech was improper as a matter of law.

Our review of the record leads us to conclude that the evidence was more than sufficient to permit a finding that Dori Vanech's conduct "involv[ed] an extreme departure from ordinary care, in a situation where a high degree of danger [was] apparent"; (internal quotation marks omitted) *Craig* v. *Driscoll*, supra, 262 Conn. 343; and, therefore, her conduct was reckless. Specifically, the evidence established that Dori Vanech ran through a stop sign into a blind and dangerous intersection, despite her familiarity with the intersection and its hazards. Her conduct was all the more egregious because, in order to run the stop sign, she first had to pull around another car that was stopped waiting to proceed onto Lakeside Drive. Finally, Dori Vanech was aware that cars proceeding northbound on Lakeside Drive had no stop light or stop sign and, consequently, that they, not she, had the right-of-way. We conclude, therefore, that the evidence amply supported the jury's finding of recklessness, and its subsequent award of punitive damages against Dori Vanech. The trial court's instructions on recklessness with respect to her conduct were proper.

## IV

Nicholas Vanech contends that the trial court improperly permitted the jury to award punitive damages against him. Specifically, he contends that, as a matter of common law, a principal cannot be held liable for punitive damages for the acts of his or her agent unless the principal authorized or ratified the agent's acts. The plaintiff contends that General Statutes § 52-183[13] abrogates that common-law principle, thereby permit-

---

[13] General Statutes § 52-183 provides: "In any civil action brought against the owner of a motor vehicle to recover damages for the negligent or reckless operation of the motor vehicle, the operator, if he is other than the owner of the motor vehicle, shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. The defendant shall have the burden of rebutting the presumption."

ting an award of punitive damages against Nicholas Vanech. The crux of the plaintiff's claim is that the legislature's inclusion of the word "reckless" in § 52-183 evinces an intent by the legislature to render the nonoperator owner of a motor vehicle liable for any punitive damages arising out of the reckless conduct of the operator in derogation of the common law. We agree with Nicholas Vanech.

The following additional facts and procedural history are relevant to our disposition of this issue. Paragraph five of the plaintiff's complaint alleged that, at the time of the accident, "Dori Vanech was operating a car owned by her father Nicholas Vanech, as a family car and/or as his agent; and she was operating [his] car with the permission and authority of . . . Nicholas Vanech." The defendants admitted the allegations of paragraph five in their amended answer to the complaint.

At the conclusion of the trial, the court instructed the jury, inter alia, that it could award punitive damages against Dori Vanech *and* Nicholas Vanech. After the court had completed its jury instructions, Nicholas Vanech excepted to the instructions on punitive damages on the ground that, under our common law, such damages properly cannot be assessed against the nonoperator owner of a motor vehicle in the absence of the owner's authorization or ratification of the operator's reckless conduct. The trial court rejected Nicholas Vanech's argument. Thereafter, he moved, inter alia, to set aside the verdict and for judgment notwithstanding the verdict regarding the award of punitive damages against him. The trial court denied the motions, concluding that § 52-183,[14] in abrogation of the common-

[14] Although the plaintiff originally had alleged that Nicholas Vanech was liable under General Statutes § 52-182, the so-called "family car doctrine," the case ultimately was tried and presented to the jury under § 52-183, and not under § 52-182. Thus, punitive damages were imputed to Nicholas Vanech pursuant to § 52-183, and not pursuant to the family car doctrine.

law rule, permits a fact finder to hold the nonoperator owner of a motor vehicle vicariously liable for punitive damages stemming from the driver's reckless operation of that vehicle.

The parties do not dispute that, at common law, there is no vicarious liability for punitive damages; *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 285, 472 A.2d 306 (1984); *Maisenbacker* v. *Society Concordia*, 71 Conn. 369, 379–80, 42 A. 67 (1899); and that under that common-law doctrine, the owner of a motor vehicle is not vicariously liable for punitive damages resulting from the driver's reckless operation of the vehicle. The plaintiff contends, however, that the trial court properly concluded that § 52-183, because of its express reference to the term "reckless," abrogates that common-law principle. We disagree with the plaintiff's contention that § 52-183 abrogates our common law in this respect.

As a threshold matter, § 52-183 provides that, in any action for damages brought against the nonoperator owner of a motor vehicle "for the negligent or reckless operation of [that] motor vehicle," the operator of the motor vehicle "shall be presumed to be the agent and servant of the owner of the motor vehicle and operating it in the course of his employment. . . ." Section 52-183 further provides that the defendant, that is, the owner of the vehicle, bears "the burden of rebutting the presumption." With respect to the latter provision, "[t]his court has repeatedly held that our statute goes further than merely establishing a presumption, in that it expressly places upon the defendant the burden of introducing evidence to rebut the presumption created by the statute. Moreover, that presumption is not ousted simply by the introduction of any evidence to the contrary." *Jancura* v. *Szwed*, 176 Conn. 285, 290, 407 A.2d 961 (1978). Indeed, "[t]he presumption ceases to be operative [only] when the trier finds proven facts which

fairly put in issue the question . . . . [I]f no evidence relevant to the issue is produced, or, if countervailing evidence is produced but the trier does not believe it, the presumption applies, and the plaintiff is entitled to have the issue found in his favor." *Koops* v. *Gregg*, 130 Conn. 185, 188, 32 A.2d 653 (1943). In the present case, the defendants adduced no evidence to rebut the presumption and, consequently, the jury was obliged to conclude, in accordance with the statute, that Dori Vanech was acting as the employee and agent of Nicholas Vanech, and during the course of her employment, when the vehicle she was operating struck the plaintiff's vehicle.

The applicability of the statutory presumption to Nicholas Vanech notwithstanding, we still must determine whether § 52-183 abrogates the common-law doctrine, which, if operative, would shield him from punitive damages predicated on a theory of vicarious liability. To answer this question, we review § 52-183 in the context of certain well established principles that guide our determination of when a legislative enactment will be deemed to have abrogated the common law. "While the legislature's authority to abrogate the common law is undeniable, we will not lightly impute such an intent to the legislature." *Munroe* v. *Great American Ins. Co.*, 234 Conn. 182, 187, 661 A.2d 581 (1995). Thus, "[w]hen a statute is in derogation of common law . . . it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope. . . . Although the legislature may eliminate a common law right by statute, the presumption that the legislature does not have such a purpose

can be overcome only if the legislative intent is clearly and plainly expressed. . . . The rule that statutes in derogation of the common law are strictly construed can be seen to serve the same policy of continuity and stability in the legal system as the doctrine of stare decisis in relation to case law." (Internal quotation marks omitted.) *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 715, 735 A.2d 306 (1999).

Applying these principles, we reject the plaintiff's contention that § 52-183 abrogates the common-law prohibition against the imposition of punitive damages predicated on vicarious liability. By its plain terms, the sole purpose of § 52-183 is to shift the burden of adducing evidence regarding an agency relationship between the owner and the operator of a vehicle from the plaintiff to the defendant: unless the *defendant* introduces persuasive evidence that *no agency relationship exists*, the plaintiff *need not present any evidence* to prove it but, instead, may rely entirely on the statutory presumption. From the standpoint of the plaintiff, the obvious benefit of establishing an agency relationship stems from the fact that, under the common-law principle of respondeat superior, an employer is vicariously liable for *compensatory damages* arising out of the tortious conduct of his employee when that conduct occurs during the course of the employee's employment.[15] See, e.g., *Stiebitz* v. *Mahoney*, 144 Conn. 443, 447, 134 A.2d 71 (1957); see also *LaBonte* v. *Federal Mutual Ins. Co.*, 159 Conn. 252, 258, 268 A.2d 663 (1970). In the absence of a relationship between the owner and the operator

---

[15] As we previously have observed with respect to the common-law doctrine of respondeat superior, " '[i]n the course of his employment' means while engaged in the service of the master, and it is not synonymous with the phrase 'during the period covered by his employment.' " *Levitz* v. *Jewish Home for the Aged, Inc.*, 156 Conn. 193, 198, 239 A.2d 490 (1968). Thus, "it must be the affairs of the principal [or master], and not solely the affairs of the agent [or servant], which are being furthered in order for the doctrine to apply." *Mitchell* v. *Resto*, 157 Conn. 258, 262, 253 A.2d 25 (1968).

of a motor vehicle such that the liability of the operator is imputed to the owner, either by statute or at common law, a plaintiff has no recourse against the owner. Section 52-183 does nothing more than create a rebuttable presumption of such a relationship between the owner and the operator of a motor vehicle, namely, an employer-employee relationship, which, under the common-law principle of respondeat superior, renders the owner *vicariously liable for compensatory damages* arising out of the negligent and reckless conduct of the operator, *but not vicariously liable for punitive damages* stemming from that conduct.[16]

In light of the language and limited purpose of § 52-183, we are not persuaded that it reasonably can be construed to authorize an award of punitive damages on the basis of vicarious liability. Nothing in the statute suggests that the nonoperator owner of a motor vehicle may be held liable for any damages other than those customarily assessed against an employer for the tortious conduct of an employee, namely, compensatory damages. Put differently, although § 52-183 relieves an injured plaintiff of the burden of going forward with evidence of an agency relationship between the nonoperator owner and the operator of the vehicle that caused the plaintiff's injuries, there is nothing in the statutory language to suggest that the liability of the vehicle's owner for the negligent or reckless conduct of the vehicle's operator is any greater than that of an employer for the tortious conduct of his employee.[17] Because an

---

[16] We note that, under the doctrine of respondeat superior, an employer generally is liable for intentional torts committed by his employees to the same extent that he is liable for damages arising out of the negligent or reckless conduct of those employees. See, e.g., *Larsen Chelsey Realty Co.* v. *Larsen*, 232 Conn. 480, 500, 656 A.2d 1009 (1995). It is evident, however, that the legislature, by limiting the applicability of the presumption created under § 52-183 to negligent and reckless conduct, elected to exclude intentional torts from the purview of that statutory provision.

[17] No pertinent legislative history is available concerning § 52-183.

employer is not vicariously liable for punitive damages arising out of the conduct of his employee, we see no reason to conclude that § 52-183 impliedly gives rise to such liability on the part of a nonoperator owner of a motor vehicle. Our conclusion is buttressed by the principle that, upon a strict construction of the statutory provision at issue, the evidence of a legislative intent to abrogate the common law must be clear. See *Alvarez* v. *New Haven Register, Inc.*, supra, 249 Conn. 715. We cannot glean such an intent from § 52-183, either expressly or by necessary implication.

The legislative genealogy of General Statutes § 14-154a,[18] which renders the owner-lessor of a motor vehicle vicariously liable for damages, *including* punitive damages, arising out of the tortious conduct of the operator-lessee; see *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 285; also provides support for our contrary determination with respect to § 52-183. "The legislative roots of . . . [§] 14-154a . . . can be found in a statute enacted in 1797 known as 'An Act to Regulate Stage and Other Carriage Drivers.' The statute provided in § 2 for the imposition of treble damages for injuries caused by one in violation of certain rules of the road; and in § 4 made the owner of the vehicle liable if the driver could not pay. . . . The statute was retained without substantive change until 1905 when the legislature amended § 4 to limit owners' liability (1) to 'actual' damages; and (2) to situations in which the driver was proved to be the owner's agent or the owner was proved negligent in his entrustment of the vehicle to the driver. The 1905 act further required the injured person to elect to proceed either against the

---

[18] General Statutes § 14-154a provides: "Any person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased, to the same extent as the operator would have been liable if he had also been the owner."

owner for actual damages or against the driver for treble damages. Public Acts 1905, Ch. 216, § 4. The restrictive 1905 act was then repealed in 1921; Public Acts 1921, Ch. 334, § 26; and replaced in 1925 with a statute providing, in language similar to § 14-154a, that '[a]ny person renting or leasing to another any motor vehicle owned by him shall be liable for any damage to any person or property caused by the operation of such motor vehicle while so rented or leased.' Public Acts 1925, Ch. 195, § 21. In 1929, the legislature amended the statute by adding the final phrase, 'to the same extent as the operator would have been liable if he had also been the owner.' Public Acts 1929, Ch. 256." (Citation omitted.) *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 287–88 n.3.

The legislature's insertion, in 1929, of the phrase "liable 'to the same extent as the operator would have been liable if he had also been the owner' " evinced an unambiguous intent to render the owner liable for *all* damages, punitive damages included, properly assessed against the operator, in derogation of the common law. Id., 287–88; see also id., 284 (§ 14-154a "cannot be regarded otherwise than as an expression of legislative judgment as to the extent—*beyond the limitations of the general principles of respondeat superior* . . . to which the [owner-lessor] of a motor vehicle which he entrusts to another should be liable for the acts of the latter" [emphasis added; internal quotation marks omitted]). General Statutes (Cum. Sup. 1935) § 1661c, the precursor to § 52-183, was enacted only six years after that 1929 amendment to what is now § 14-154a. It is reasonable to presume, therefore, that, if the legislature had intended for *§ 52-183* to abrogate the common-law rule against vicarious liability for punitive damages, it would have used language similarly explicit to that contained in *§ 14-154a*. The fact that the legislature

did not employ such language strongly suggests a contrary intent.[19]

We conclude, therefore, that § 52-183 does not abrogate the common-law principle that punitive damages may not be assessed against parties whom the law holds vicariously liable for the acts of others. Consequently, the jury verdict imposing punitive damages against Nicholas Vanech for the reckless conduct of Dori Vanech cannot stand.

---

[19] We note that the plaintiff's contention that § 52-183 abrogates the common law is based, in part, on certain language in *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 192 Conn. 280, which, the plaintiff asserts, broadly indicates that it is the public policy of this state that *any* owner of a motor vehicle shall be liable to the same extent as the operator would have been liable if he had also been the owner. In particular, the plaintiff points to the following language in *Gionfriddo*: "We have the task today of applying the statutory public policy embodied in § 14-154a. The legislature has determined that *the owner or the lessor* of a motor vehicle shall be liable 'to the same extent as the operator would have been liable if he had also been the owner.'" (Emphasis added.) Id., 286–87. We thereafter also observed that "*Levick* v. *Norton*, 51 Conn. 461 (1884), [construed a statute] requiring any driver who violated designated rules of the road to 'pay to the person injured treble damages and costs; and . . . the owner of such vehicle shall, if the driver is unable to do so, pay the damages' . . . ." *Gionfriddo* v. *Avis Rent A Car System, Inc.*, supra, 287. We recognized that *Levick* "construed a statute assigning special liability to an owner, while General Statutes § 14-154a covers *both owners and lessors. We have been able to discern no reason of policy, nor have the defendants offered any, to distinguish between the liability of owners and of lessors.*" (Emphasis added.) Id., 288 n.4. Our holding in *Gionfriddo* was limited, however, to a determination that § 14-154a abrogated the common law *only insofar as* it makes the *owner-lessor* of a motor vehicle liable for punitive damages to the same extent that the *operator-lessee of* the motor vehicle is liable for such damages. Id., 285, 290. That the legislature, under § 14-154a, has decided to hold an owner-lessor vicariously liable for punitive damages based upon the conduct of its operator-lessee undoubtedly is predicated, at least in part, on the fact that the owner-lessor presumably derives a profit from the lease of the vehicle, such that its vicarious liability for punitive damages may be deemed to be a cost of doing business, which the owner-lessor may spread among its customers. Of course, the same cannot be said of motor vehicle owners generally. In any event, we disavow any dicta in *Gionfriddo* that may be read as suggesting that this state's public policy regarding the imposition of punitive damages predicated on vicarious liability is any broader than that reflected in the plain language of § 14-154a itself.

## V

The defendants next claim that the trial court improperly permitted the jury to begin its deliberations and to review the evidence before entertaining the parties' exceptions to the court's jury charge and "before all exhibits were finally [marshaled] and reviewed by the attorneys." Because no harm flowed from these alleged improprieties, the defendants' claim must fail.

The following additional facts are relevant to this claim. Prior to charging the jury, the trial court conducted an off-the-record conference with counsel regarding the court's proposed charge and the parties' objections to it. After charging the jury, and before the jury commenced deliberating, the court asked counsel whether "I left something out that I said I was going to say, or said something that I didn't say I was going to say, or if [counsel] can find an error that I can correct right now." The court then held another off-the-record discussion with counsel regarding their objections to the charge. Jury deliberations commenced, however, before the court, on the record, formally had entertained the parties' objections to the charge. The court made no modifications to its charge after hearing counsel's objections to it in open court.

In addition, upon learning that the jury had begun deliberating before the parties had placed their exceptions to the jury charge on the record, counsel for the defendants notified the court that he had not had an opportunity to undertake one final review of the trial exhibits. Defense counsel acknowledged, however, that, prior to jury deliberations, he had gone "through the exhibits to make sure every exhibit was accounted for . . . ." Counsel further stated: "Now, I'm not saying anything was done wrong. I have no evidence to suggest it was insofar as things getting into the exhibits which

were not properly there, such as an . . . exhibit [marked for identification purposes only], for example."

The defendants took no further action concerning these matters until five days after the jury had returned its verdict, at which time they filed a motion for a mistrial and a new trial. In support of their claim, the defendants alleged that the trial court had "improperly tainted the process by allowing the jury to deliberate and view the [trial] 'exhibits' before counsel had an opportunity to take exceptions to the [c]ourt's instructions of law to the jury; before the [c]ourt had an opportunity to consider whether or not it would charge the jury differently after hearing the exceptions to the charge; and before counsel had an opportunity to review the package of 'exhibits' which [was] submitted to the jury at the time of [its] deliberations." The trial court denied the defendants' motion.

"In our review of the denial of a motion for mistrial, we have recognized the broad discretion that is vested in the trial court to decide whether an occurrence at trial has so prejudiced a party that he or she can no longer receive a fair trial. The decision of the trial court is therefore reversible on appeal only if there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Anderson*, 255 Conn. 425, 435, 773 A.2d 287 (2001); *Ferino* v. *Palmer*, 133 Conn. 463, 466, 52 A.2d 433 (1947) (same standard of review applied in civil case).

The defendants have failed to identify any possible prejudice stemming either from the premature commencement of jury deliberations or from the defendants' alleged inability to review the trial exhibits immediately before those exhibits were given to the jury. With respect to the defendants' jury charge claim, the court apparently had been made aware, albeit informally, of the defendants' objections to the charge. More-

over, the court made no corrections to the charge after hearing the parties' exceptions. Thus, any procedural impropriety that was committed regarding the timing of the exceptions and jury deliberations could not possibly have harmed the defendants.

Practice Book § 16-20[20] is the only authority cited by the defendants in support of their otherwise unsubstantiated assertion that the trial court's failure to hear the exceptions to its charge prior to the commencement of jury deliberations constituted harmful error. Practice Book § 16-20, however, merely serves "to alert the court to any claims of error while there is still an opportunity for correction in order to avoid the economic waste and increased court congestion caused by unnecessary retrials." (Internal quotation marks omitted.) *Pestey* v. *Cushman*, 259 Conn. 345, 373, 788 A.2d 496 (2002). In the present case, the trial court did not correct or otherwise amend its charge after hearing the parties' exceptions; indeed, even if the court had decided to modify its charge in light of the exceptions, it had ample time to do so before the jury had progressed with its deliberations. We, therefore, reject the defendants' claim that they are entitled to a new trial because the trial court formally did not hear the parties' exceptions to its charge prior to the beginning of jury deliberations.

We reach the same conclusion regarding the defendants' contention that the trial court improperly failed to afford them the opportunity to review the exhibits immediately before those exhibits were provided to the jury. The defendants have not demonstrated—indeed,

---

[20] Practice Book § 16-20 provides: "An appellate court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. The exception shall be taken out of the hearing of the jury."

they have not even alleged—any prejudice that might have flowed from their purported inability to review the exhibits one final time. The defendants make no claim that the jury received improper exhibits or that the jury failed to receive all of the exhibits. Furthermore, we are aware of no rule of practice that grants counsel an unfettered right to a "final review" of the trial exhibits immediately before such exhibits are given to the jury.[21] Although counsel routinely are given the opportunity to undertake such a review, and properly so, there is nothing to suggest that any deviation from that practice in the present case prejudiced the defendants, who, at trial, acknowledged both that they had reviewed the exhibits earlier and that they could identify no harm that might have flowed from the alleged impropriety. Accordingly, this claim also must fail.[22]

## VI

Finally, the defendants maintain that the trial court improperly permitted the plaintiff to amend her complaint to include an allegation of recklessness after the jury began its deliberations. We disagree.

The following additional procedural history is necessary to our disposition of this claim. Count two of the

---

[21] Practice Book § 16-15, which is entitled, "Materials to Be Submitted to Jury," simply provides: "(a) The judicial authority shall submit to the jury all exhibits received in evidence.

"(b) The judicial authority may, in its discretion, submit to the jury:

"(1) The complaint, counterclaim and cross complaint, and responsive pleadings thereto;

"(2) A copy or tape recording of the judicial authority's instructions to the jury;

"(3) Upon request by the jury, a copy or tape recording of an appropriate portion of the judicial authority's instructions to the jury."

[22] We, of course, do not mean to suggest that a trial court should allow the jury to begin its deliberations before hearing the parties' exceptions to the charge or before counsel have had the opportunity to review the exhibits; indeed, quite the contrary is true. Nevertheless, the record is clear that the defendants were not prejudiced in any way by the procedure that inadvertently was employed in the present case.

plaintiff's original complaint alleged that Dori Vanech, either deliberately and/or with reckless disregard, violated several statutory and common-law rules of the road.[23] On February 25, 2000, the plaintiff amended paragraph twelve of count two of her complaint. The amendment stated in relevant part: "As a result of the foregoing injuries and *the negligence* and carelessness of . . . Dori Vanech, the plaintiff . . . received medical treatment, physical therapy, diagnostic testing, injections, medications and will be obliged to spend further sums for such purposes in the future; in addition she has been caused to suffer a diminished earning capacity." (Emphasis added.) Paragraphs seven through ten of count two of the complaint, which alleged that the defendant was reckless, remained unchanged. On May 15, 2001, the plaintiff filed an amended complaint. Paragraph twelve of count two of the amended complaint stated: "As a result of the foregoing injuries and *the*

[23] Specifically, paragraph seven of count two of the complaint alleged in relevant part: "On said date and at said time and place . . . Dori Vanech, deliberately and/or recklessly failed to obey the stop sign at the intersection of Quarry Road and Lakeside Drive; instead she deliberately or recklessly passed the car in front of hers which was stopped at the stop sign; ran through the stop sign without significantly slowing her vehicle and crashed into the plaintiff's vehicle." Paragraph eight of count two of the complaint alleged in relevant part: "By deliberately and/or recklessly failing to stop or slow her vehicle as she entered the intersection of Quarry Road and Lakeside Drive, and by deliberately and/or recklessly passing the car in front of her . . . Dori Vanech, drove her motor vehicle at a rate of speed which is greater than reasonable having regard to the width, traffic and use of the highway road, the intersection of streets and the general conditions." Paragraph nine of count two of the complaint alleged: "Dori Vanech, deliberately or with reckless disregard, operated the motor vehicle in violation of [§] 14-218a and/or [§] 14-222 of the Connecticut General Statutes, as aforesaid." Paragraph ten of count two of the complaint alleged: "As a result of said collision and the recklessness of . . . Dori Vanech for whose recklessness . . . Nicholas Vanech is also liable, the plaintiff . . . suffered injuries of a serious, painful and permanent nature . . . ." Finally, paragraph twelve of count two of the complaint alleged: "As a result of the foregoing injuries and the conduct of . . . Dori Vanech, the plaintiff . . . received medical treatment, diagnostic testing, medications and will be obliged to spend further sums for such purposes in the future."

*negligence* and carelessness of . . . Dori Vanech, the plaintiff . . . received medical, hospital and surgical treatment, physical therapy, diagnostic testing, pain management, injections, medications and will be obliged to spend further sums for such purposes in the future." (Emphasis added.) Again, paragraphs seven through ten of count two of the amended complaint, which alleged that the defendant was reckless, remained unchanged.[24]

After the jury began its deliberations, the trial court granted the plaintiff's motion to substitute the word "recklessness" for the word "negligence" in paragraph twelve of count two of the amended complaint. The trial court stated that the amendment could not possibly surprise or otherwise prejudice the defendants in light of the other allegations in count two that so clearly and unambiguously alleged recklessness. The defendants, nevertheless, objected to the amendment, claiming surprise and unfair prejudice.

"Our standard of review of the plaintiff's claim is well settled. While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion."

---

[24] As we have indicated; see footnote 7 of this opinion; the amended complaint was the operable complaint.

(Citations omitted; internal quotation marks omitted.) *Wagner* v. *Clark Equipment Co.,* 259 Conn. 114, 128, 788 A.2d 83 (2002). It is the burden of the party opposing the amendment to demonstrate that the trial court clearly abused its discretion in granting the motion. Id.

The defendants could not have been surprised or prejudiced regarding the tardy amendment to paragraph twelve of count two of the amended complaint. The substantive allegations of Dori Vanech's recklessness were contained at all times in paragraphs seven through ten of count two in both the original complaint and the amended complaint. Furthermore, the defendants' claim of surprise and prejudice is belied by defense counsel's opening statement, prior to the commencement of evidence, which included the following remarks: "[Dori Vanech] admitted that she was at fault at the scene of the accident. She's going to admit it on the witness stand when she testifies and I'm admitting it now and its admitted in the pleadings. She was at fault. She was negligent in causing the accident. *[The plaintiff] however ha[s] gone farther than that. [She has] alleged recklessness. The judge is going to instruct you what recklessness is and what it is not at the end of the case.*" (Emphasis added.) Thus, the defendants' claims of surprise and unfair prejudice are wholly without merit. We conclude, therefore, that the defendants have failed to establish that the trial court abused its discretion in granting the plaintiff's motion to amend her complaint following the commencement of jury deliberations.

The judgment is reversed in part and the case is remanded to the trial court with direction to vacate the award of punitive damages against Nicholas Vanech; the judgment is affirmed in all other respects.

In this opinion the other justices concurred.