OLGA J. DISTEFANO *v.* JOSEPH E.
MILARDO, JR., ET AL.
(AC 23368)

Dranginis, DiPentima and Hennessy, Js.

Argued January 16—officially released May 11, 2004

*Lawrence S. Dressler*, for the appellant (plaintiff).

*Michael C. Conroy*, with whom, on the brief, were *William J. Gallitto* and *Patty G. Swan*, for the appellees (named defendant et al.).

*Opinion*

DiPENTIMA, J. In this legal malpractice action, the plaintiff, Olga J. DiStefano, appeals from the judgment of the trial court rendered after it directed a verdict on the malpractice and breach of contract counts for the defendants Joseph E. Milardo, Jr., an attorney, and Jozus, Milardo and Thomasson, the law firm in which Milardo is a partner, and after the jury verdict on the remaining counts in favor of the defendants.[1] The plaintiff claims that the court improperly (1) directed a verdict in favor of the defendants on the malpractice count, (2) instructed the jury that no attorney-client relationship existed between the defendants and the plaintiff's son, Lawrence J. DiStefano, and (3) refused to allow the jury to consider evidence of the standard of care for an attorney for breach of a fiduciary duty. We disagree and, therefore, affirm the judgment of the trial court.

---

[1] The action was withdrawn as against certain other defendants. Only Milardo and his law firm are involved as appellees on appeal. We refer to them in this opinion as the defendants.

The following facts are necessary for the resolution of the plaintiff's appeal. The plaintiff and her husband, Sebastian DiStefano, had three children: Steven DiStefano, Lawrence DiStefano and Luann Filer. The defendants represented both Sebastian DiStefano and the plaintiff on various legal matters from 1991 through 1995.

In February, 1992, Milardo prepared a will for the plaintiff naming Sebastian DiStefano and Lawrence DiStefano as the beneficiaries. In March, 1995, Sebastian DiStefano died. Shortly thereafter, the plaintiff opened a joint checking account with Lawrence DiStefano. From May 5 through 8, 1995, she was hospitalized for alcoholism and related symptoms. On May 10, 1995, Milardo drafted a power of attorney, including a provision granting Lawrence DiStefano the right to make gifts to himself from her property or accounts. On the same day, Milardo drafted a living will and a document naming Lawrence DiStefano as conservator in the event of her future incapacity. The plaintiff executed all of those documents.

The plaintiff was again hospitalized for alcoholism and related symptoms from September 22 through 28, 1995. During her hospitalization, Lawrence DiStefano warned her that his two siblings were attempting to take control of her financial affairs. While in the hospital, she requested that Milardo draft a trust agreement for her, naming Lawrence DiStefano as the trustee. She signed the trust agreement in the hospital.

The agreement listed certain real property, located in Middletown and Rockfall, owned by the plaintiff. The plaintiff also created a trust account, not listed in the trust agreement, of which Lawrence DiStefano was named the trustee. At the time she signed the trust agreement, the plaintiff also signed two quitclaim deeds, prepared by Milardo, transferring the Middletown and

Rockfall properties into Lawrence DiStefano's name. Milardo handled the subsequent sale of these properties.

After her release from the hospital, she requested that Milardo remove Lawrence DiStefano's authority from her financial affairs. She also spoke to Milardo about revoking the trust. Milardo reminded her that the trust was crafted to protect her assets from her other two children and to manage her real property.

The plaintiff was hospitalized twice more for alcoholism and related symptoms in October, 1995, and was admitted for inpatient treatment for alcoholism and depression on June 21, 1996. On August 6, 1996, she revoked the trust agreement and closed the joint checking account.

On July 6, 1998, the plaintiff filed the four count complaint in this action alleging (1) legal malpractice, (2) breach of contract, (3) breach of fiduciary duty and (4) negligent infliction of emotional distress. The case proceeded to trial before the jury. The court directed a verdict in favor of the defendants on the counts of legal malpractice and breach of contract on the ground that the plaintiff had failed to present expert testimony on the issue of proximate cause. The jury returned a verdict in favor of the defendants on the breach of fiduciary duty and negligent infliction of emotional distress counts. This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff claims that the court improperly directed a verdict in favor of the defendants on the legal malpractice count because there was no expert testimony on causation.[2] The plaintiff argues that the court improp-

---

[2] The plaintiff raises no issues as to the breach of contract claim.

erly failed to consider the entirety of Mario Zangari's[3] testimony in determining that Zangari had not opined on proximate cause. We disagree with the plaintiff.

Our standard for reviewing a challenge to a directed verdict is well settled. "Generally, litigants have a constitutional right to have factual issues resolved by the jury. . . . Directed verdicts [therefore] are historically not favored and can be upheld on appeal only when the jury could not have reasonably and legally reached any other conclusion. . . . We review a trial court's decision to direct a verdict for the defendant by considering all of the evidence, including reasonable inferences, in the light most favorable to the plaintiff. . . . A verdict may be directed where the decisive question is one of law or where the claim is that there is insufficient evidence to sustain a favorable verdict." (Internal quotation marks omitted.) *Young* v. *Rutkin*, 79 Conn. App. 355, 363, 830 A.2d 340, cert. denied, 266 Conn. 920, 835 A.2d 60 (2003).

Generally, to prevail on a legal malpractice claim, in Connecticut, a plaintiff "must present expert testimony to establish the standard of proper professional skill or care. . . . Not only must the plaintiffs establish the standard of care, but they must also establish that the defendant's conduct legally caused the injury of which they complain." (Citation omitted; internal quotation marks omitted.) *Dunn* v. *Peter L. Leepson, P.C.*, 79 Conn. App. 366, 369, 830 A.2d 325, cert. denied, 266 Conn. 923, 835 A.2d 472 (2003).

"The requirement of expert testimony in malpractice cases serves to assist lay people, such as members of the jury and the presiding judge, to understand the applicable standard of care and to evaluate the defendant's actions in light of that standard." (Internal quota-

---

[3] Mario Zangari is a licensed attorney who testified at trial as an expert for the plaintiff regarding professional responsibility.

tion marks omitted.) *Dubreuil* v. *Witt*, 80 Conn. App. 410, 420, 835 A.2d 477 (2003), cert. granted on other grounds, 268 Conn. 903, 845 A.2d 407 (2004).

Accordingly, if a plaintiff fails to provide expert testimony on the issue of proximate cause, a directed verdict is proper. *Vona* v. *Lerner*, 72 Conn. App. 179, 189–92, 804 A.2d 1018 (2002) (holding that trial court properly granted defendants' motion for directed verdict in absence of expert testimony as to proximate cause), cert. denied, 262 Conn. 938, 815 A.2d 138 (2003); *Solomon* v. *Levett*, 30 Conn. App. 125, 128, 618 A.2d 1389 (1993) (affirming directed verdict in favor of defendant where plaintiff did not produce expert testimony tending to show defendant's breach proximately caused her injuries); *Somma* v. *Gracey*, 15 Conn. App. 371, 374–75, 544 A.2d 668 (1988) (holding that plaintiff must produce expert testimony that breach of professional standard of care occurred and that breach was proximate cause of injuries suffered by plaintiff).

"[T]he test of proximate cause is whether the defendant's conduct is a substantial factor in bringing about the plaintiff's injuries. . . . The existence of the proximate cause of an injury is determined by looking from the injury to the negligent act complained of for the necessary causal connection." (Internal quotation marks omitted.) *Vona* v. *Lerner*, supra, 72 Conn. App. 190. Here, the plaintiff claims that there was expert testimony to establish that Milardo was the proximate cause of the plaintiff's loss.[4] We disagree.

[4] The following colloquy took place between the defendants' attorney and Zangari:

"[Defendants' Counsel]: Now, but you also said that [Lawrence DiStefano] had specific duties as trustee as defined in that trust; is that correct?"

"[The Witness]: Correct.

"[Defendants' Counsel]: And generally, and you don't have to read them all, but what are those duties as trustee?

"[The Witness]: His primary duty was to make sure that his mother received funds sufficient to take care of her during her lifetime.

"[Defendants' Counsel]: Okay, Okay. And I think you said that—I think

The plaintiff's claimed injury was her son's alleged theft of money from her bank account. Viewing the evidence in the light most favorable to the plaintiff and reviewing the entirety of the expert testimony, we do not see where Zangari's testimony addressed whether the alleged breach of the standard of care by Milardo proximately caused the damages claimed by the plaintiff.

The plaintiff also argues that *Paul* v. *Gordon*, 58 Conn. App. 724, 754 A.2d 851 (2000), provides an exception to the general rule that expert testimony is required in malpractice cases. That exception applies "where there is such an obvious and gross want of care and skill that the neglect is clear even to a lay person." (Internal quotation marks omitted.) Id., 727. The exception provided for in *Paul* is inapplicable in this case because *Paul* is factually distinguishable from the present case.

Here, we do not have a situation in which the attorney's alleged behavior was clear to a layperson. In this case, expert testimony was required to show the applicable standard of care and how Milardo's behavior should be evaluated in light of that standard. Consequently, the plaintiff's claim must fail.

## II

The plaintiff's final two claims challenge the trial court's charge to the jury. Our standard of review of a

---

you testified that if that had been discussed with her, then you wouldn't have a problem with [Lawrence] DiStefano being both the trustee and the remainderman or remainderperson; is that correct?

"[The Witness]: I believe I said that if she—if he discussed it and she understood the risks that were inherent in it, then it's her decision to do that.

"[Defendants' Counsel]: Okay. And, as a matter of fact, if it had been talked about with her, then you wouldn't have a problem with it; is that correct?

"[The Witness]: If she fully understood what she was doing and that the conflict existed that her son could take the moneys, that she was—her moneys and use them for his benefit and not hers and she accepted that, that's her risk."

challenged jury instruction is well settled. "[J]ury instructions are to be read as a whole, and instructions claimed to be improper are read in the context of the entire charge. . . . A jury charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]nstructions to the jury need not be in the precise language of a request. . . . Moreover, [j]ury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 831–32, 836 A.2d 394 (2003).

A

As to the breach of fiduciary duty count, the plaintiff claims that the court improperly instructed the jury that no attorney-client relationship existed between Milardo and Lawrence DiStefano. The plaintiff argues that there was sufficient evidence of an attorney-client relationship between Milardo and Lawrence DiStefano for the issue to have reached the jury. We disagree with the plaintiff.

As with any issue, the court had no duty to submit the issue of the existence of an attorney-client relationship to the jury unless there was evidence reasonably supporting that finding. See *Batick* v. *Seymour*, 186 Conn. 632, 641, 443 A.2d 471 (1982) (holding that court has duty to submit to jury no issue on which evidence would not reasonably support finding); *Gerstenzang* v. *Glenville News & Florist, Inc.*, 71 Conn. App. 531, 534, 802 A.2d 230 (2002).

In this case, a review of the record reveals that although there was evidence of interaction between

Milardo and Lawrence DiStefano, it was insufficient to support the existence of an attorney-client relationship. "An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession." *Somma* v. *Gracey,* supra, 15 Conn. App. 379. The burden of establishing an attorney-client relationship is on the party claiming the existence of such a relationship. See *Solomon* v. *Aberman,* 196 Conn. 359, 384, 493 A.2d 193 (1985).

In this case, the plaintiff failed to present sufficient evidence of such a relationship and, therefore, the court had a duty not to submit the issue to the jury.

The plaintiff argues that there was evidence tending to show an attorney-client relationship. Specifically, the plaintiff points out that (1) Milardo gave Lawrence DiStefano "fatherly advice," (2) the plaintiff signed two quitclaim deeds, prepared by Milardo, and without representation by other counsel, and Lawrence DiStefano reviewed the deeds, and (3) Lawrence DiStefano faxed documents to Milardo pertaining to the sale of the Rockfall and Middletown properties.

The following additional facts are relevant to the resolution of the plaintiff's claim. As the trustee, Lawrence DiStefano was taking care of and attempting to sell the two pieces of the plaintiff's real property. In his capacity as trustee, he faxed documents to Milardo. Milardo would review them and then talk to the plaintiff about them. Faxing documents to an attorney's office does not in and of itself establish an attorney-client relationship. The fact that Lawrence DiStefano did not hire an attorney to review the two quitclaim deeds also fails to show an attorney-client relationship. The property was transferred to him as trustee so he could tend to and possibly sell it. Finally, giving advice of a fatherly nature about a family member's drinking problem falls

well short of establishing an attorney-client relationship. That evidence taken as a whole fails to reasonably support a finding of an attorney-client relationship. Moreover, there was no evidence presented of any payment, from Lawrence DiStefano to the defendants, for services rendered. There was no evidence of either a retainer agreement or a contract between the two men. Those activities are relevant to the determination of its existence. See, e.g., *Dubreuil* v. *Witt*, 65 Conn. App. 35, 43–44, 781 A.2d 503 (2001). Consequently, we conclude that the court properly charged the jury that no attorney-client relationship existed between Milardo and Lawrence DiStefano.

## B

The plaintiff next argues that the court improperly precluded the jury from considering evidence of the standard of care for an attorney on the breach of a fiduciary duty claim.[5] Specifically, the plaintiff argues that the testimony of Zangari was essential to that count and that the court's charge removed the testimony from the jury's consideration. Because we conclude that the jury charge was appropriate and did not remove the testimony, we disagree with the plaintiff.

The plaintiff claims that the charge to the jury struck all of Zangari's testimony. The court instructed the jury that it could not "base a finding that the defendants breached their fiduciary duty on any claim of negligence in their rendering of legal services to the plaintiff because that claim is out of the case." That statement removed the malpractice count from the jury's consideration; it did not remove the testimony of Zangari. Because the court removed the malpractice claim from the case, the jury was unable to base a finding of a breach of a fiduciary duty on a finding that the defen-

---

[5] Although not explicitly framed as such, the claim is an attack on the jury charge, and this court will address it as such.

dants had committed malpractice. Although the jury was told that it could not consider the malpractice claim in determining whether there was a breach of a fiduciary duty, nowhere in the court's charge was the jury instructed that it should disregard the testimony of Zangari. The jury was free to consider all of his testimony. As a consequence, the plaintiff's argument must fail.

The judgment is affirmed.

In this opinion the other judges concurred.