******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KEYBANK, N.A. *v.* EMRE YAZAR ET AL.
(SC 20648)

Robinson, C. J., and McDonald, D'Auria,
Mullins and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 8-265ee (a)), "a mortgagee who desires to foreclose upon a mortgage . . . shall give notice to each homeowner who is a mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice."

Pursuant further to statute (§ 8-265dd (b)), "no judgment of strict foreclosure nor any judgment ordering a foreclosure sale shall be entered in any action instituted by the mortgagee . . . for the foreclosure of an eligible mortgage unless . . . notice to the homeowner who is a mortgagor has been given by the mortgagee in accordance with section 8-265ee and the time for response has expired . . . ."

The plaintiff bank sought to foreclose a mortgage on certain real property owned by the defendants. The named defendant, E, had executed a promissory note in favor of the plaintiff's predecessor, F Co., that was secured by the mortgage. The defendant O, who is E's former spouse, was not a signatory to the note. E subsequently failed to make required payments on the note, and, in 2016, F Co. sent separate notices of default to both E and O. Pursuant to § 8-265ee (a), F Co. also sent E and O notices that advised them of the resources available under the state's Emergency Mortgage Assistance Program (EMAP), which is designed to assist homeowners in avoiding foreclosure by providing a mechanism and funding for emergency mortgage and lien assistance payments. Thereafter, the plaintiff became the payee of the note as successor by virtue of its merger with F Co., and it commenced a foreclosure action against E and O that was subsequently dismissed. The plaintiff then commenced a second foreclosure action against E and O, the present action, which was based on the same default that was the subject of the earlier foreclosure action. The trial court subsequently granted the plaintiff's motion for summary judgment as to liability and rendered judgment of strict foreclosure. O appealed to the Appellate Court, claiming that the trial court lacked subject matter jurisdiction over the present foreclosure action because the plaintiff had failed to comply with the EMAP notice requirement contained in § 8-265ee. The plaintiff countered that § 8-265ee was satisfied when EMAP notices were sent to E and O in 2016. The Appellate Court agreed with O and concluded that, in accordance with its recent decision in *MTGLQ Investors*, *L.P.* v. *Hammons* (196 Conn. App. 636), the EMAP notice requirement is jurisdictional, the particular mortgagee that wishes to foreclose must be the same entity that sends the EMAP notice, § 8-265ee requires that each foreclosure action be preceded by the sending of an EMAP notice, and, accordingly, the plaintiff could not rely on the 2016 EMAP notice sent by F Co. before the earlier foreclosure action was commenced. The Appellate Court reversed the judgment of the trial court and remanded the case with direction to render judgment dismissing the action for lack of subject matter jurisdiction. On the granting of certification, the plaintiff appealed to this court. *Held*:

1. The Appellate Court incorrectly concluded that the EMAP notice requirement set forth in § 8-265ee (a) is subject matter jurisdictional, but, contrary to the plaintiff's claim, that requirement is a mandatory condition precedent to the filing of a foreclosure action:

   a. This court concluded, after reviewing the language of § 8-265ee (a), that that statute creates a mandatory obligation, on the part of the mortgagee, to provide an EMAP notice to the homeowner prior to initiating a foreclosure action, and the mortgagee's failure to provide such notice means that the mortgagee has failed to satisfy a condition precedent and, therefore, has failed to allege a claim on which relief can be granted:

The plain language of § 8-265ee (a) provides that a mortgagee who seeks to foreclose a mortgage "shall" give notice to a homeowner, and, although the use of the word "shall" does not invariably create a mandatory duty, the language of § 8-265ee supported O's position that the statute creates a mandatory obligation that must be satisfied prior to the mortgagee's initiation of the foreclosure action, as the EMAP notice requirement is not merely one of convenience but, rather, relates to the substantive rights of and resources available to homeowners under the EMAP provisions, § 8-265ee and a related EMAP provision, § 8-265dd, both articulate the consequences for failing to give notice or for failing to allow the required waiting period to pass prior to initiating a foreclosure action, and the legislature made it clear that the burden rests with the mortgagee to file an affidavit to demonstrate compliance with the EMAP notice requirement.

b. Contrary to the Appellate Court's conclusion, the EMAP notice requirement does not implicate a court's subject matter jurisdiction:

This court's prior case law has distinguished between conditions imposed on the commencement of a statutorily created right of action, which generally are deemed to be jurisdictional, and conditions imposed on a common-law action, which are deemed to be nonjurisdictional, a mortgage foreclosure is a common-law cause of action, even though Connecticut's foreclosure system is a combination of both statutory law and common law, foreclosure related statutes did not supplant the common-law cause of action itself, there was no intent on the part of the legislature to abrogate this common-law process or to change the jurisdiction of the courts in § 8-265ee, and, accordingly, the EMAP notice requirement in § 8-265ee is not jurisdictional.

Moreover, this court overruled the Appellate Court's decision in *MTGLQ Investors*, *L.P.*, to the extent that it held that the EMAP notice requirement is jurisdictional.

Furthermore, contrary to the claim of the amicus curiae, this court's determination that the EMAP notice requirement does not implicate subject matter jurisdiction did not frustrate the legislative intent of certain 2008 amendments to the EMAP notice requirement statute, as the public policy of informing homeowners of their rights and the resources available to them to assist in avoiding foreclosure is preserved by this court's holding that the EMAP notice requirement is a mandatory condition precedent.

2. The Appellate Court correctly concluded that the plaintiff had failed to satisfy its EMAP notice obligation under § 8-265ee because, even though F Co. sent an EMAP notice to O in 2016, prior to the commencement of the earlier foreclosure action, the plaintiff never sent a new EMAP notice prior to the initiation of the second, and wholly separate, present foreclosure action:

Although § 8-265ee was ambiguous as to whether a separate EMAP notice must be provided prior to the initiation of each foreclosure action, the legislative history surrounding the enactment of EMAP made clear that protections for homeowners was the impetus behind imposing more stringent requirements on lenders, EMAP notice serves a critical role in protecting homeowners by informing them of the resources available to assist in avoiding foreclosure and what rights homeowners have in accessing those resources, a homeowner's right to access EMAP does not end after a first foreclosure action is dismissed or withdrawn, and a homeowner must be provided with notice that the resources under EMAP are still available in subsequent foreclosure actions because it would be unreasonable to expect lay homeowners to know that they continue to have access to this specialized program in the event that they are not provided with notice in a subsequent foreclosure action.

Moreover, the text of § 8-265ee supported the conclusion that a mortgagee must provide an EMAP notice for each foreclosure action initiated, insofar as the sending of the EMAP notice prompts the beginning of a timeline for receiving EMAP assistance, and, if a new notice were not required, and, therefore, a new timeline were not set, the remedies available would appear to have "expired" in light of when notice had been provided in a previously withdrawn or dismissed case.

Furthermore, the need for an EMAP notice prior to the commencement of any foreclosure action is especially evident when, as in the present case, the defendant homeowner was not a signatory to the note, did not actually receive an EMAP notice prior to the first foreclosure action, and was aware only that the first foreclosure action had been dismissed, and, accordingly, the plaintiff's failure to provide an EMAP notice to O prior to the commencement of the second foreclosure action impaired O's ability to take advantage of resources that may have helped her retain her interest in her property.

In addition, this court disagreed with the Appellate Court to the extent that it suggested that it is legally significant that different entities were required to send the EMAP notices because the plaintiff, as the successor to F Co., operated as the same "mortgagee," a term defined by statute (§ 8-265cc (4)) as "the original lender under a mortgage, or its agents, successors, or assigns," for purposes of the EMAP statutes, and, therefore, there was no substantive difference for the purposes of the statutory scheme between F Co. and the plaintiff.

Argued November 21, 2022—officially released August 1, 2023

*Procedural History*

Action to foreclose a mortgage on certain real property owned by the defendants, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendants were defaulted for failure to plead; thereafter, the court, *Genuario, J.*, granted the plaintiff's motion for summary judgment as to liability only; subsequently, the court, *Genuario, J.*, granted the plaintiff's motion for a judgment of strict foreclosure and rendered judgment thereon, from which the defendant Ozlem Yazar appealed to the Appellate Court, *Moll*, *Alexander* and *DiPentima*, *Js.*, which reversed the trial court's judgment and remanded the case with direction to render judgment dismissing the action; thereafter, the plaintiff, on the granting of certification, appealed to this court. *Reversed in part*; *judgment directed.*

*Geoffrey K. Milne*, with whom, on the brief, was *Victoria L. Forcella*, for the appellant (plaintiff).

*Ozlem Yazar*, self-represented, the appellee (defendant).

*Jeffrey Gentes*, *Anika Singh Lemar*, *Zachary Shelley*, law student intern, and *Natasha Reifenberg*, law student intern, filed a brief for the Housing Clinic of Jerome N. Frank Legal Services Organization as amicus curiae.

*Opinion*

McDONALD, J. This certified appeal concerns this state's Emergency Mortgage Assistance Program (EMAP),[1] General Statutes §§ 8-265cc through 8-265kk,[2] which is designed to assist homeowners in avoiding foreclosure by providing a mechanism and funding for emergency mortgage and lien assistance payments, among other resources. See General Statutes §§ 8-265dd and 8-265ee. As part of EMAP, § 8-265ee (a) requires mortgagees to provide notice to homeowners to inform them of the resources available under the program. In this appeal, we must consider two questions relating to this notice requirement. First, we have to determine whether the EMAP notice requirement in § 8-265ee (a) is jurisdictional. Second, we must decide whether an EMAP notice sent before the commencement of a prior foreclosure action by the predecessor mortgagee is valid for a subsequent action initiated by the successor mortgagee. We conclude that the EMAP notice requirement in § 8-265ee (a), although a mandatory condition precedent, is not jurisdictional in nature. Second, we conclude that § 8-265ee (a) requires that a mortgagee provide an EMAP notice for each foreclosure action initiated. Therefore, in the present case, the plaintiff, KeyBank, N.A., was required to provide an EMAP notice to the defendant Ozlem Yazar[3] prior to initiating a subsequent foreclosure action after a prior foreclosure action had been dismissed.

In June, 2014, Emre Yazar (Emre) executed and delivered a note in the principal amount of $580,000 to First Niagara Bank, N.A., to refinance an existing loan and to convert it from a fixed rate to a variable rate. The defendant, who is Emre's former spouse,[4] was not a signatory to the note. To secure the note, Emre and the defendant executed a mortgage on real property they jointly owned in Weston. Beginning in March, 2016, and for the months following, Emre failed to make required payments on the note. On August 22, 2016, First Niagara sent separate notices of default to both Emre and the defendant at the address of the mortgaged property. Accompanying each notice of default was a notice from First Niagara regarding EMAP. As required by § 8-265ee (a), the EMAP notices advised Emre and the defendant of the availability of EMAP and informed them of the resources available to help them avoid foreclosure. The notices informed them that, within sixty days of the date of the letter, they had the right to have a meeting with the mortgagee or a consumer credit counseling agency to attempt to resolve the default, and they had the right to contact the Connecticut Housing Finance Authority to obtain information and to apply for emergency mortgage assistance payments if the parties were unable to resolve the default. See General Statutes § 8-265ee (a). Lastly, the notices advised Emre and the defendant that a court may not render a foreclosure

judgment prior to the expiration of a required waiting period.

In October, 2016, First Niagara merged with and into the plaintiff. The plaintiff is now the payee of the note as successor by virtue of merger with First Niagara. On January 16, 2017, the plaintiff commenced a foreclosure action against Emre and the defendant based on an alleged default on the note by Emre, beginning in March, 2016. *KeyBank, N.A.* v. *Yazar*, Superior Court, judicial district of Fairfield, Docket No. FBT-CV-17-6061930-S. On April 26, 2017, the trial court dismissed the action because of the plaintiff's failure to provide the foreclosure mediator with the forms and information required by General Statutes (Rev. to 2017) § 49-31*l* (c) (4) (now § 49-31*l* (d)) and its subsequent failure to comply with the court's order requiring submission of such forms by a date certain.

On or about August 24, 2017, the plaintiff commenced the present foreclosure action against Emre and the defendant based on the same default by Emre alleged in the first foreclosure action and on Emre's failure to cure such default.[5] Thereafter, the defendant attempted to participate in foreclosure mediation on various occasions, to which the plaintiff and Emre both objected because the defendant was not the borrower on the note. The trial court denied the defendant's initial petitions to participate but eventually granted a subsequent petition to participate in mediation. The foreclosure mediation was assigned to a mediator but was terminated before mediation with the mortgagee was scheduled because Emre, the borrower, indicated he was not interested in keeping the property. Even though the defendant was the resident and a homeowner, the plaintiff did not allow for assumption of the note, and, therefore, the mediation was terminated because the borrower declined any further mediation proceedings. Thereafter, Emre and the defendant were defaulted for failure to plead. The defendant then filed an answer and special defenses. On September 13, 2018, the plaintiff filed a motion for summary judgment as to liability, arguing that it complied with the requisite EMAP notice provisions and established a prima facie case for foreclosure. The plaintiff argued that the EMAP notice[6] sent by First Niagara to the defendant prior to the commencement of the previous foreclosure action satisfied the EMAP notice requirement for the present action. The defendant argued in response that the August 22, 2016 EMAP notice did not satisfy the statutory requirements for the present foreclosure action and that, in any event, she never received the initial EMAP notice, which was returned to the "sender."[7] The trial court heard argument on the motion and, thereafter, granted the plaintiff's motion for summary judgment. The court determined that there was no genuine issue of material fact regarding the default of the note and that the plaintiff satisfied its notice obligations regarding default, acceleration of

the mortgage, and EMAP. The court subsequently rendered judgment of strict foreclosure.

Thereafter, the defendant appealed to the Appellate Court, arguing that the trial court lacked subject matter jurisdiction over the foreclosure action because the plaintiff failed to comply with the EMAP notice requirements contained in § 8-265ee. *KeyBank*, *N.A.* v. *Yazar*, 206 Conn. App. 625, 627, 261 A.3d 9 (2021). The plaintiff countered that § 8-265ee was satisfied by the August 22, 2016 EMAP notice sent by First Niagara prior to the initiation of the first foreclosure action. Id., 629–30. The Appellate Court agreed with the defendant and concluded that, in accordance with its recent decision in *MTGLQ Investors*, *L.P.* v. *Hammons*, 196 Conn. App. 636, 638, 645, 230 A.3d 882, cert. denied, 335 Conn. 950, 238 A.3d 21 (2020), the EMAP notice is jurisdictional. See *KeyBank*, *N.A.* v. *Yazar*, supra, 629–32. The court reiterated its holding in *Hammons* that the particular mortgagee entity that wishes to foreclose on the mortgage must be the same entity that sends the EMAP notice. See id., 631–33. It also held that § 8-265ee requires that each foreclosure action stand on its own EMAP notice. Id., 633. As such, the court concluded that the plaintiff could not rely on the previous EMAP notice sent by First Niagara before the prior foreclosure action was commenced. See id., 634 and n.8. Accordingly, the Appellate Court reversed the judgment of the trial court and remanded the case with direction to render judgment dismissing the action for lack of subject matter jurisdiction. Id., 634.

The plaintiff subsequently filed a petition for certification to appeal, which we granted, limited to the following issues: (1) "Did the Appellate Court correctly conclude that a mortgagee's failure to comply with the [EMAP] notice requirements set forth in . . . § 8-265ee (a) deprives the trial court of subject matter jurisdiction over the mortgagee's foreclosure action?" And (2) "[d]id the Appellate Court correctly conclude that an EMAP notice that had been sent by a mortgagee to a [homeowner] prior to a first foreclosure action, which was later dismissed, did not satisfy the notice requirements of § 8-265ee (a) in connection with a second foreclosure action subsequently commenced against the [homeowner] based on the same default under the same mortgage?" *KeyBank*, *N.A.* v. *Yazar*, 340 Conn. 901, 263 A.3d 100 (2021).

On appeal, the plaintiff contends that the Appellate Court incorrectly concluded both that the EMAP notice was jurisdictional in nature and that the August 22, 2016 EMAP notice did not satisfy the plaintiff's obligation under § 8-265ee. We disagree with the Appellate Court that the EMAP notice is jurisdictional in nature, but we agree that the plaintiff's EMAP notice obligation under the statute was not satisfied because the plaintiff never issued a new EMAP notice prior to the initiation of this

second, and wholly separate, foreclosure action, which we conclude it was required to do under the statute.

I

We begin with the plaintiff's contention that the Appellate Court incorrectly concluded that the EMAP notice required by § 8-265ee (a) is subject matter jurisdictional in nature. The plaintiff argues that, notwithstanding the use of the word "shall" in § 8-265ee (a), the EMAP notice requirement in § 8-265ee is directory rather than mandatory and that the Appellate Court incorrectly concluded that the requirement implicates subject matter jurisdiction. We address each contention in turn.

A

Whether the EMAP notice provision in § 8-265ee is directory or mandatory is a question of statutory interpretation, over which we exercise plenary review. See, e.g., *Day* v. *Seblatnigg*, 341 Conn. 815, 826, 268 A.3d 595 (2022). We review § 8-265ee in accordance with General Statutes § 1-2z and our familiar principles of statutory construction. See, e.g., *Wind Colebrook South, LLC* v. *Colebrook*, 344 Conn. 150, 161, 278 A.3d 442 (2022).

We begin with the text of the statute. Section 8-265ee (a) provides in relevant part: "[A] mortgagee who desires to foreclose upon a mortgage . . . *shall give notice to each homeowner* who is a mortgagor by registered, or certified mail, postage prepaid at the address of the property *which* is secured by the mortgage. *No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice.* Such notice shall advise the homeowner of his delinquency or other default under the mortgage and shall state that the homeowner has sixty days from the date of such notice in which to (1) have a face-to-face meeting, telephone or other conference acceptable to the authority with the mortgagee or a face-to-face meeting with a consumer credit counseling agency to attempt to resolve the delinquency or default by restructuring the loan payment schedule or otherwise, and (2) contact the authority, at an address and phone number contained in the notice, to obtain information and apply for emergency mortgage assistance payments if the homeowner and mortgagee are unable to resolve the delinquency or default." (Emphasis added.)

Relevant to this appeal, the plain language of § 8-265ee (a) provides that each mortgagee who desires to foreclosure on a mortgage "shall" give notice to homeowners by registered or certified mail, postage prepaid, at the address of the property secured by the mortgage. "[T]his court has often stated that the use of the word shall, though significant, does not invariably create a mandatory duty. . . . The usual rule, however, is that [t]he . . . use of the word shall generally evidences an

intent that the statute be interpreted as mandatory." (Internal quotation marks omitted.) *1st Alliance Lending, LLC* v. *Dept. of Banking*, 342 Conn. 273, 282, 269 A.3d 764 (2022). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory." (Internal quotation marks omitted.) Id.

Here, the language of § 8-265ee militates in favor of the defendant's position that the statute creates a mandatory obligation of the plaintiff prior to initiating suit. The EMAP notice requirement is not merely one of convenience but, rather, relates to the substantive rights of and resources available to homeowners under the EMAP provisions. Section 8-265ee and a related EMAP provision, § 8-265dd, both articulate the consequences for failing to give notice or for failing to allow the required waiting period to pass prior to initiating suit. Specifically, § 8-265ee prohibits the initiation of a valid suit without providing the EMAP notice by affirmatively providing that "[n]o such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice." General Statutes § 8-265ee (a). Section 8-265dd, which establishes EMAP, also prevents the court from rendering any judgment of foreclosure until the EMAP notice has been sent, the sixty day response time has expired, and, if relevant, a determination has been made on the application for emergency mortgage assistance payments. See General Statutes § 8-265dd (b); see also General Statutes § 8-265ee (a). Specifically, the statute provides in relevant part: "[N]o judgment of strict foreclosure nor any judgment ordering a foreclosure sale shall be entered in any action instituted by the mortgagee . . . for the foreclosure of an eligible mortgage unless . . . notice to the homeowner who is a mortgagor has been given by the mortgagee in accordance with section 8-265ee and the time for response has expired . . . ." General Statutes § 8-265dd (b).[8]

As such, we conclude that the EMAP notice provision in § 8-265ee is a mandatory requirement. We also conclude that the EMAP notice is a condition precedent to the filing of a foreclosure action. To have a cause of action on which relief can be granted, the notice requirement must be fulfilled. The legislature has made it clear that the burden rests with the mortgagee to demonstrate compliance with the EMAP notice requirement. Specifically, subsection (b) of § 8-265ee requires the mortgagee to file an affidavit with the court stating that the notice provisions of subsection (a) have been complied with and that the relevant time period has expired. Only after the mortgagee files such an affidavit may the foreclosure suit continue. See General Statutes § 8-265ee (b). If a mortgagee fails to comply with § 8-

265ee (a), it has failed to satisfy a mandatory condition precedent and, therefore, has failed to allege a claim on which relief can be granted.[9]

B

We next turn to the plaintiff's contention that the EMAP notice requirement does not implicate a court's subject matter jurisdiction. A determination regarding a trial court's subject matter jurisdiction is a question of law, over which our review is plenary. See, e.g., *Bank of New York Mellon* v. *Tope*, 345 Conn. 662, 677, 286 A.3d 891 (2022). It is well established that, in a common-law action, such as a foreclosure action, there is a presumption in favor of jurisdiction, and a strong showing of legislative intent is required to overcome this presumption. See *Neighborhood Assn., Inc.* v. *Limberger*, 321 Conn. 29, 45–46, 136 A.3d 581 (2016). Not all statutory conditions precedent are jurisdictional, and "our case law has distinguished between conditions imposed on the commencement of a statutorily created right of action and statutory conditions imposed on an action existing under the common law. The former generally is deemed to be jurisdictional, whereas the latter is not." Id., 46.

It is well settled that a mortgage foreclosure is a common-law cause of action. See, e.g., id., 48; see also, e.g., *Society for Savings* v. *Chestnut Estates, Inc.*, 176 Conn. 563, 568, 409 A.2d 1020 (1979) ("[mortgage] foreclosure is a common-law, nonstatutory process"). Mortgage foreclosures are distinguishable from other forms of foreclosure actions—for example, the right to foreclose a lien for common charges—that have been properly characterized as statutory rights of action, as they are grounded in the legislature's expansion of Connecticut foreclosure rights through statute. See, e.g., *Neighborhood Assn., Inc.* v. *Limberger*, supra, 321 Conn. 48. The Superior Court's equitable power to hear mortgage foreclosure cases, however, derives solely from the common law. See, e.g., *Society for Savings* v. *Chestnut Estates, Inc.*, supra, 568. Accordingly, because a mortgage foreclosure is a common-law process, the EMAP notice requirement in § 8-265ee is not jurisdictional unless the legislature clearly evidenced an intent to abrogate this common-law process.

"[Although] the legislature's authority to abrogate the common law is undeniable, we will not lightly impute such an intent to the legislature." (Internal quotation marks omitted.) *Matthiessen* v. *Vanech*, 266 Conn. 822, 838, 836 A.2d 394 (2003). "[T]he presumption that the legislature does not have such a purpose [to eliminate or alter a common-law right] can be overcome only if the legislative intent is clearly and plainly expressed." (Internal quotation marks omitted.) Id., 838–39. We see no such clear and plain expression of an intent to change the jurisdiction of the courts in § 8-265ee. But cf. *Spears* v. *Garcia*, 263 Conn. 22, 28–29, 818 A.2d 37

(2003) (holding that General Statutes § 52-557n (a) (1) "clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from suit for torts committed by their employees and agents" by articulating statutory cause of action and liability for damages caused by municipalities' agents and employees). Therefore, we conclude that the EMAP notice requirement is not jurisdictional. Rather, it is a mandatory condition precedent to the commencement of a foreclosure action.[10]

The defendant contends that this court should conclude that the EMAP notice requirement is jurisdictional for the same reasons that led the Appellate Court to reach that conclusion in *MTGLQ Investors, L.P.* v. *Hammons*, supra, 196 Conn. App. 636. We decline to do so. In *Hammons*, the Appellate Court addressed the question of whether the EMAP notice requirement is jurisdictional as a matter of first impression. See id., 638. It concluded that "the EMAP notice requirement set forth in § 8-265ee (a), when applicable, is a condition precedent to the commencement of a foreclosure action. As such, the failure to comply with the notice requirement deprives the trial court of subject matter jurisdiction." Id., 645. In concluding that, because the EMAP notice requirement was a mandatory condition precedent, it must a priori be jurisdictional, the Appellate Court failed to consider the distinction between conditions legislatively imposed on statutory causes of action and those legislatively imposed on common-law causes of action. As previously noted, statutory conditions imposed on common-law actions, such as mortgage foreclosures, are generally not jurisdictional unless the legislature has made it clear that it wished to alter the court's jurisdiction or to abrogate the common-law right. See, e.g., *Neighborhood Assn., Inc.* v. *Limberger*, supra, 321 Conn. 46; *Matthiessen* v. *Vanech*, supra, 266 Conn. 838. As such, we disagree with and overrule the Appellate Court's decision in *Hammons* to the extent that it held that the EMAP notice requirement is jurisdictional.

The amicus argues that the Connecticut foreclosure system is a combination of both the common-law and statutory remedies provided by the legislature, and that the detailed statutory framework of EMAP indicates that the legislature intended the EMAP provisions to impose jurisdictional limitations. We agree with the amicus that our state foreclosure system is a combination of both statutory laws and common law; however, we disagree that the legislature has abrogated the common law or that the common-law process is now dominated by statute. The statutes enacted in this area merely supplement the common law and add requirements to carry out important public policies of the state as they relate to foreclosure; the statutes do not supplant the common-law cause of action itself. Mortgage foreclosure, especially, is a category of foreclosure

actions that originated in and has remained a creature of the common law. See, e.g., *Neighborhood Assn., Inc.* v. *Limberger*, supra, 321 Conn. 48 (distinguishing strict foreclosure of mortgage, which is common-law right, from right to foreclosure on common charges liens, which is "more properly characterized as a statutory right of action"); *Society for Savings* v. *Chestnut Estates, Inc.*, supra, 176 Conn. 568 (noting that, although strict foreclosure of mortgage is no longer separate proceeding in equity, it remains "common-law, nonstatutory process").

The amicus also argues that a determination that the EMAP notice is not jurisdictional frustrates the legislative intent of the 2008 EMAP amendments. We disagree. Our holding that the EMAP notice is a mandatory condition precedent does nothing to dilute or impair the legislative intent or public policy underlying the 2008 amendments. The mortgagee is still mandated to provide the homeowner with the EMAP notice. Therefore, the public policy underlying the notice requirement—informing homeowners of their rights and the resources available to them to assist in avoiding foreclosure—is fulfilled. A foreclosure action may not proceed unless the EMAP notice requirement is carried out. If the plaintiff does not satisfy that condition, it has failed to allege a claim on which relief can be granted.

In summary, we conclude that § 8-265ee requires that a mortgagee plaintiff notify the homeowner of EMAP and the resources available under that program prior to initiating a foreclosure action against the homeowner. This requirement, although not jurisdictional, is a mandatory condition precedent that must be fulfilled for the plaintiff to have a proper cause of action on which relief can be granted. Therefore, compliance with the requirement must be affirmatively pleaded by the plaintiff. See General Statutes § 8-265ee (b).

## II

Finally, we turn to the plaintiff's contention that, in the present case, the EMAP notice sent prior to the initiation of the first foreclosure action by the plaintiff's predecessor satisfied the plaintiff's EMAP notice obligation for the present action. The plaintiff contends that the Appellate Court incorrectly concluded that the particular mortgagee foreclosing on the mortgage must be the entity that sent the EMAP notice and that each action, even if based on the same default, requires a new notice. See *KeyBank, N.A.* v. *Yazar*, supra, 206 Conn. App. 632–34. The plaintiff disagrees with the Appellate Court's conclusion that the EMAP notice sent by First Niagara in 2016 did not satisfy the plaintiff's obligation in this present action. It bases its argument both on the principles of merger—that First Niagara merged with and into the plaintiff and, therefore, the plaintiff held the same rights as First Niagara—as well as the fact that both foreclosure actions related to the same default,

and therefore only one EMAP notice was needed. The defendant contends that the prior notice did not satisfy the plaintiff's EMAP notice obligation under § 8-265ee because the present action is a new and wholly separate action. The defendant argues that § 8-265ee requires that an EMAP notice be sent before the commencement of any foreclosure action—even subsequent actions based on the same default—and, therefore, a new notice must be mailed for each foreclosure action. We agree with the defendant and conclude that the EMAP notice sent in August, 2016, prior to the commencement of the initial foreclosure action, did not satisfy the plaintiff's notice obligation under § 8-265ee for the present action because that statute requires that a notice be sent prior to the commencement of each foreclosure action.

Whether § 8-265ee requires that an EMAP notice be sent prior to the initiation of each foreclosure action is a question of statutory interpretation, over which our review is plenary. See, e.g., *Day* v. *Seblatnigg*, supra, 341 Conn. 826. We again review § 8-265ee in accordance with § 1-2z and our familiar principles of statutory construction. See, e.g., *Sena* v. *American Medical Response of Connecticut, Inc.*, 333 Conn. 30, 45–46, 213 A.3d 1110 (2019). As previously discussed, § 8-265ee (a) provides in relevant part: "[A] mortgagee who desires to foreclose upon a mortgage which satisfies the standards contained in subdivisions (1), (9), (10) and (11) of subsection (e) of section 8-265ff, shall give notice to each homeowner who is a mortgagor by registered, or certified mail, postage prepaid at the address of the property which is secured by the mortgage. No such mortgagee may commence a foreclosure of a mortgage prior to mailing such notice. . . ." As we explained, the statute requires a mortgagee to send an EMAP notice prior to commencing a foreclosure action. It is unclear from the plain text of the statute, however, whether, in situations such as this, in which multiple foreclosure actions were commenced based on the same default, multiple EMAP notices must be sent. As such, we conclude that § 8-265ee is ambiguous as to whether a separate EMAP notice must be sent prior to the initiation of each subsequent foreclosure action. Therefore, we "look for interpretive guidance to the legislative history and circumstances surrounding [the statute's] enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, 338 Conn. 803, 815, 259 A.3d 1157 (2021).

EMAP was enacted in 1993 to "assist homeowners in avoiding foreclosure by providing a mechanism whereby the mortgage could be reinstated over a period of up to [thirty-six] months." 1 D. Caron & G. Milne, Connecticut Foreclosures (11th Ed. 2021) § 17-2:4, pp. 1091–92. As we explained, the original program was at the lender's

option, and the legislature stopped funding the program two years after its enactment. See id., p. 1092. In 2008, when the need for foreclosure relief became evident, No. 08-176, §§ 5 through 10, of the 2008 Public Acts revised the original EMAP legislation to expand its scope and to enhance its availability for Connecticut homeowners. See id. It also removed the voluntary nature of the program. Id., § 17-2:4.1, p. 1094. Compliance with EMAP therefore became mandatory for all lenders of any qualifying mortgages. Id. The requirements of EMAP extended to both the original mortgagee as well as its successors and assigns. Id.

The legislature emphasized the remedial nature of the legislation during Senate discussions of the 2008 amendments. Specifically, Senator Eric D. Coleman stated: "[T]he bill, to me, is a very important piece of *remedial legislation*, at a time when real economic crisis for homeowners is occurring. It is my hope that the judges who hear foreclosure cases will apply this bill in a way that allows this *remedial purpose* to be carried out." (Emphasis added.) 51 S. Proc., Pt. 17, 2008 Sess., p. 5071.

It is a well established principle of statutory interpretation that "remedial statutes should be construed liberally in favor of those whom the law is intended to protect . . . ." (Internal quotation marks omitted.) *Hernandez* v. *Apple Auto Wholesalers of Waterbury, LLC*, supra, 338 Conn. 815. The legislative history surrounding the enactment of EMAP in this state makes clear that protections for homeowners was the impetus behind providing more stringent requirements on lenders under EMAP. The program provides assistance to eligible homeowners in bringing their mortgages current and retaining rights to their homes and properties. The EMAP notice is a crucial step in this process and serves to inform homeowners of the resources available to them to assist in avoiding foreclosure and what rights they have in accessing those resources. After all, if a homeowner does not know of the existence of EMAP, then the important protections afforded to homeowners through the program would be rendered meaningless. A homeowner's right to access EMAP does not end after a first action is dismissed or withdrawn. Furthermore, the homeowners protected by EMAP are not necessarily individuals with particularized legal knowledge as to the mechanics of foreclosures, and the dismissal of a foreclosure action does not foretell that another action will always be filed in its place. The ability to access EMAP continues, and, therefore, a defendant homeowner must receive notice that the resources are still available in subsequent actions because it would be unreasonable to expect lay homeowners to know that they continue to have access to this specialized program, especially after they already had participated to some extent in EMAP during the pendency of the first foreclosure. Without a new notice being sent prior to the commencement of a subsequent foreclosure, it

would be just as reasonable for homeowners to think that their prior participation in EMAP was their only opportunity to benefit from its objectives. Accordingly, we conclude that § 8-265ee requires mortgagees to provide a new EMAP notice upon initiation of *any* foreclosure action, including a successive foreclosure action predicated on the same default. This requirement is likely to have a remedial benefit for homeowners and their awareness of EMAP, while imparting a very minimal, if any, burden on mortgagees.

Although, as we previously acknowledged, the text of § 8-265ee does not itself provide this answer, it does provide support for our conclusion. For example, the sending of the EMAP notice prompts the beginning of a timeline for receiving EMAP aid. See General Statutes § 8-265ee. Once the notice is sent, the statute provides requisite deadlines for applying for assistance, meeting with the mortgagee, and ultimately proceeding with the foreclosure, each of which is based on a specified length of time from sending the notice. See General Statutes § 8-265ee. If a new notice is not required, and therefore a new timeline is not set, the remedies would appear to be "expired" based on the notice of a previously withdrawn or dismissed case, which is not how EMAP functions. The remedies remain available under each foreclosure; as such, the notice and accompanying timeline are reset at the initiation of each new foreclosure.

The particular facts of this case highlight the need for an EMAP notice prior to the commencement of any subsequent foreclosure action. First Niagara sent Emre and the defendant EMAP notices in August, 2016, prior to the initiation of the first foreclosure action. The record reflects that the defendant never received her EMAP notice. The initial foreclosure action was thereafter dismissed for disciplinary reasons related to the plaintiff. The defendant, who was not a signatory to the note, may not have been aware of whether the note was still in default, or whether a resolution had been reached between Emre and the plaintiff. The defendant was aware only that the foreclosure action had been dismissed. When the plaintiff initiated the second foreclosure action, it did so in a separate and distinct proceeding and in a different judicial district, where the action was assigned a different docket number. Had the defendant received a second EMAP notice, she would have been aware that a second foreclosure action was imminent and that EMAP was still available to her as a homeowner. The EMAP notice would have made the defendant aware that there were resources and means by which she may be able to retain her interest in the property. The plaintiff's failure to mail such a notice prior to the commencement of the second action impaired the defendant's ability to take advantage of these resources. Particularly concerning is that, in this case, the plaintiff knew or should have known that the defendant never received her initial EMAP notice but

still failed to send a notice prior to initiating the second foreclosure action. The only EMAP notice the plaintiff introduced as proof of compliance was a notice, envelope, and certified mail receipt that was marked "not deliverable" and "return to sender." We need not decide whether § 8-265ee (a) requires proof of delivery of the EMAP notice given that, in this case, there is no dispute that the plaintiff failed to send a subsequent notice prior to initiating the second foreclosure action.

Finally, we disagree with the Appellate Court to the extent that it suggested that it is legally significant that different entities were required to send the notices. See *KeyBank*, *N.A.* v. *Yazar*, supra, 206 Conn. App. 634. Shortly after First Niagara sent the August, 2016 EMAP notice, the plaintiff acquired First Niagara. The plaintiff, as the successor to First Niagara, operated as the same "mortgagee" for the purposes of the EMAP statutes. See General Statutes § 8-265cc (4). Section 8-265cc (4) defines "[m]ortgagee" as "the original lender under a mortgage, or its agents, *successors*, or assigns . . . ." (Emphasis added.) There is no substantive difference for purposes of the EMAP statutory scheme between First Niagara and the plaintiff. Our analysis does not turn on the particular entity that sent the EMAP notice; rather, what is of consequence is ensuring that an EMAP notice is sent prior to the initiation of any subsequent foreclosure action, as each foreclosure action must stand on its own EMAP notice.

## CONCLUSION

The EMAP notice requirement in § 8-265ee is a nonjurisdictional requirement but is nonetheless a mandatory condition precedent that a plaintiff bears the burden of satisfying before it commences any mortgage foreclosure. Until the condition is satisfied, the plaintiff has not alleged a cause of action on which relief can be granted. The plaintiff, in the present case, could not rely on the EMAP notice sent prior to the commencement of the initial foreclosure action that was dismissed. Accordingly, the plaintiff failed to satisfy its EMAP notice obligation when it failed to mail the defendant an EMAP notice before it initiated the present foreclosure action. Unless an EMAP notice is sent prior to the initiation of the foreclosure action, the plaintiff does not have a claim to relief.

The judgment of the Appellate Court is reversed with respect to its conclusion that the plaintiff's failure to comply with the EMAP notice requirement in § 8-265ee deprived the trial court of subject matter jurisdiction and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to the trial court with direction to render judgment dismissing the action for failure to comply with a mandatory condition precedent; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

[1] The official title of the program is the Emergency Mortgage Assistance Payment Program; see General Statutes § 8-265dd; but, for convenience, we refer to the program by its more common name and acronym.

[2] Although §§ 8-265cc through 8-265kk were the subject of certain amendments since the events underlying this appeal; see, e.g., Public Acts 2021, No. 21-44, §§ 6 through 14; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of those statutes.

[3] The plaintiff initiated this action against the named defendant, Emre Yazar, and Ozlem Yazar. Emre Yazar was defaulted for failure to plead and has since filed no pleadings in this action and has not participated in this appeal. As such, all references to the defendant in this opinion are to Ozlem Yazar.

[4] The record indicates that the parties divorced pursuant to a Turkish divorce decree. The decree and any related Connecticut proceedings are not relevant to the issues on appeal.

[5] It is unclear on this record how the plaintiff can maintain a foreclosure action against the defendant when the defendant was not a borrower on the note that gave rise to the loan default. Emre was the only borrower listed on the note. Although both Emre and the defendant signed the mortgage deed, the record does not indicate what consideration, if any, the defendant received—as opposed to the consideration Emre received in the form of a $580,000 loan—from the plaintiff in exchange for the transfer of her property interest as security to the plaintiff. The defendant asserted a special defense in the trial court regarding her lack of obligation under the note, but the trial court did not specifically address that defense in its decision on the plaintiff's motion for summary judgment. The defendant, however, did not raise the issue on appeal. Therefore, it is not properly before us, and we do not address it. Should that special defense be raised in any subsequent foreclosure action, we would expect it to be specifically addressed by the trial court.

[6] Unless otherwise indicated, all subsequent references in this opinion to the August 22, 2016 EMAP notice are to the notice that First Niagara sent to the defendant.

[7] The EMAP notice provided to the defendant before the commencement of the first foreclosure action, which the plaintiff relies on and attached to its motion for summary judgment in the present action, was marked as "return to sender." The plaintiff was unable to provide any evidence that an EMAP notice was ever successfully delivered to the defendant.

[8] The plaintiff contends that, if the notice requirement in § 8-265ee (a) is jurisdictional, then it conflicts with § 8-265dd (b). The plaintiff contends that, under § 8-265dd (b), a court may exercise jurisdiction over a foreclosure action, even if a notice is not sent, so long as it does not render a judgment prior to issuance of the notice. We disagree that the two provisions conflict. "In reading these two statutes together, [w]e are . . . guided by the principle that the legislature is always presumed to have created a harmonious and consistent body of law . . . ." (Internal quotation marks omitted.) *LaFrance* v. *Lodmell*, 322 Conn. 828, 837, 144 A.3d 373 (2016). Section 8-265dd (b) requires that two conditions be satisfied prior to judgment being rendered: (1) notice to the homeowner in accordance with § 8-265ee, and (2) the sixty day time for response has expired. Notice to the homeowner in accordance with § 8-265ee requires that the notice be sent *prior* to the commencement of the foreclosure action. The two provisions are consistent with each other. Section 8-265dd (b) merely clarifies that both the notice must be sent *and* the time to respond must have expired prior to the court's rendering judgment.

[9] The failure to state a claim on which relief can be granted is typically addressed through a motion to strike, and, if the motion is granted, the plaintiff is allowed an opportunity to replead the stricken claim. See Practice Book §§ 10-39 (a) (1) and 10-44. The failure to send an EMAP notice, however, cannot be cured, as the plaintiff must send the EMAP notice prior to initiating suit to have an actionable claim to relief. In these instances, we have stated "that the use of a motion for summary judgment to challenge the legal sufficiency of a complaint is appropriate when the complaint fails to set forth a cause of action and the defendant can establish that the defect could not be cured by repleading." (Internal quotation marks omitted.) *Wilton Meadows Ltd. Partnership* v. *Coratolo*, 299 Conn. 819, 832, 14 A.3d 982 (2011). As such, either a motion to strike or a motion for summary judgment is an available procedural avenue to challenge the failure to send an EMAP notice.

[10] Pennsylvania passed the Homeowner's Emergency Mortgage Act (Act 91), which established a program similar to Connecticut's EMAP, called the Homeowner's Emergency Mortgage Assistance Program. See 35 Pa. Stat. and Cons. Stat. Ann. § 1680.401c et seq. (West 2012). Our legislature understood the similarities between these two programs when it enacted the 2008 amendments to EMAP. See Conn. Joint Standing Committee Hearings, Banks, Pt. 1, 2008 Sess., pp. 123–24. In 2013, the Pennsylvania Supreme Court addressed whether the notice requirement in that state's program was jurisdictional. Like we conclude in the present case, the Pennsylvania high court concluded that, although the mortgagee's notice requirement was a mandatory condition precedent to the commencement of a foreclosure action, it was not jurisdictional. *Beneficial Consumer Discount Co.* v. *Vukman*, 621 Pa. 192, 202–203, 77 A.3d 547 (2013). The court explained: "The failure to pay the mortgage according to its terms gave [the mortgagee] its cause of action. To act on that cause of action, it was required to give notice under Act 91. As the notice it gave did not meet the requirements of [Act 91], it was defective and the procedural requirements for enforcement were not met; that defect, however, did not affect the jurisdiction of the court to hear the matter." Id.

---